**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**

| | |
|---|---|
| **GINA MOORE,** individually and on behalf of all other similarly situated,<br><br>*Plaintiff*,<br><br>*v.*<br><br>**TRUSTED OFFERS LLC**, a Florida company,<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

Plaintiff Gina Moore ("Plaintiff Moore" or "Moore") brings this Class Action Complaint and Demand for Jury Trial against Defendant Trusted Offers LLC ("Defendant" or "Trusted Offers") to stop the Defendant from violating the Telephone Consumer Protection Act ("TCPA") by sending unsolicited text messages to phone numbers that are registered on the National Do Not Call registry ("DNC"). Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendant's conduct. Plaintiff Moore alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Moore is a resident of Memphis, Tennessee.

2. Defendant Trusted Offers is a Florida registered company located in Miami, Florida. Defendant Trusted Offers conducts business throughout the US including in this District.

## JURISDICTION AND VENUE

3. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4. This Court has personal jurisdiction over the Defendant because the Defendant does business in this District.

5. Venue is proper in this District under 28 U.S.C. § 1391(b) because the Plaintiff resides in this District.

## INTRODUCTION

6. As the Supreme Court explained at the end of its term, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

7. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

8. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

9. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

10. According to online robocall tracking service "YouMail," 3.9 billion robocalls were placed in November 2025 alone, at a rate of 128.7 million per day. www.robocallindex.com (last visited December 21, 2025).

11. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

12. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

13. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

**COMMON ALLEGATIONS**

14. Trusted Offers purchases properties from consumers for cash.[3]

15. Defendant Trusted Offers sends text messages to consumers to solicit its cash buying offers.

16. Defendant Trusted Offers places cold calls and sends cold text messages for the purpose of generating business, as per a former employee:

---

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

[3] https://trustedoffersusa.com/



[4]

17. Defendant Trusted Offers sends telemarketing text messages to consumer phone numbers that are registered on the DNC, as per Plaintiff's experience.

18. The text messages that Trusted Offers sends to consumers are solicitations.

19. The text messages encourage, promote, and/or invite a commercial transaction from the consumer.

20. In addition, consumers incur a cost when selling a property to Trusted Offers.

21. Trusted Offers claims that its cash offer program covers all consumers costs and that it includes all repairs:



[5]

22. However, the payment offer that Trusted Offers provides to consumers takes into account the fees, costs, repairs, and profit that Trust Offers requires from each transaction.

---

[4] https://www.linkedin.com/in/aisel-ahmed-95bb07259/?originalSubdomain=eg
[5] https://trustedoffersusa.com/#process

23. Trusted Offers profits from buying properties below market value and reselling them.

24. According to NewAgainHouses.com, a company that purchases properties for cash, cash buyers like Trusted Offers use what is called the 70% rule. This rule accounts for holding costs, insurance, overhead and other expenses, including profit. It does not account for remodeling.

25. NewAgainHouses.com explains that a property worth $100,000 can result in a $30,000 cash offer:

> **ESTIMATED SALES PRICE X 70% – REHAB COSTS = MAX OFFER**
>
> Typically with this calculation, the real estate investor will gross 30% in additional income. This money will go toward holding costs, insurance, overhead, and other expenses. Their maximum offer will typically yield around an 8-15% profit after all other expenses are taken care of.
>
> Using the formula above, assume you are selling a house that needs $40,000 in rehab to be able to sell it for $100,000. The maximum offer you should expect would be:
>
> **100,000 X 70% – 40,000 = $30,000**
>
> You would end up receiving a $30,000 cash offer for your home. This may seem low, but the real estate investor needs to have the funds to remodel the home and sell it for a modest profit.[6]

26. In comparison, a consumer can sell their property on their own without an agent, or sell using a real estate agent that will result in a cost of 5-6% in commissions, plus closing costs/taxes, which is far less than what it would cost selling a property to a cash buyer.

27. As a result of the above, consumers incur a cost by doing business with the Defendant, as they will receive a depreciated cash offer for their property that takes into account the costs of renovations, other associated purchasing costs, and the need to earn a profit.

---

[6] https://newagainhouses.com/blog/how-to-determine-a-fair-cash-offer-for-your-home

28. In response to these text messages, Plaintiff Moore brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA and award of statutory damages to the members of the Class and costs.

**PLAINTIFF MOORE'S ALLEGATIONS**

29. Plaintiff Moore is the sole owner and exclusive user of her cell phone number ending in 6390.

30. Plaintiff Moore's cell phone number begins with a 901 Tennessee area code.

31. Plaintiff Moore is a resident of Tennessee and was present in Tennessee when she received text messages from Defendant Trusted Offers.

32. Plaintiff Moore registered her cell phone number on the DNC on December 16, 2004.

33. Plaintiff Moore uses her cell phone number for personal use only as one would use a landline telephone number in a home.

34. Plaintiff Moore uses her cell phone number primarily to communicate with friends and family. It is also used to schedule personal appointments and for her other household needs.

35. Plaintiff Moore pays for her cell phone plan. It is not reimbursed by a business.

36. Plaintiff Moore has never listed her cell phone number publicly as a business contact number.

37. On November 24, 2025 at 3:48 PM, Plaintiff Moore received an unsolicited text message to her cell phone from 629-249-6925.

38. On November 25, 2025 at 4:46 PM, Plaintiff Moore received a 2nd unsolicited text message to her cell phone from 629-249-6925.

39. On November 28, 2025 at 7:45 AM, Plaintiff Moore received a 3rd unsolicited text message to her cell phone from 629-249-6925:




40. All of the text messages are solicitations, encouraging Plaintiff Moore to contact Jonathan, the sender of the text messages for the sake of selling Plaintiff's property.

41. Based on an investigation conducted by Plaintiff's attorneys, Jonathan Feuer, the owner of Trusted Offers is the sender of the text messages.

42. Feuer purchases properties from consumers throughout the US, such as in North Carolina:


Jonathan Feuer's Post

Off market property for sale near Randleman
Summarized by AI from the post below

NC Real Estate Investors · Join
Jonathan Feuer · June 17 ·

Off market opportunity between Randleman and Pleasant Garden right off I-73.
3 Bed 2 Bath
1987 Build
Needs Full Reno
Sitting on 8 Acres.
Also fielding offers for 19 acres a couple parcels over.
Comment for more info. Thanks

1 4 comments [7]

43. Trusted Offers sends text messages to consumers using an autodialer.

44. On trustedoffersllc.org, consumers are informed that by providing contact information, they will received SMS notifications and alerts from Trusted Offers, but they can reply STOP to unsubscribe at any time:


SMS Opt-In

I Consent to Receive SMS Notifications, Alerts from Trusted Offers LLC. Message frequency varies. Message & data rates may apply. Text HELP to (614) 929-2438 for assistance. You can reply STOP to unsubscribe at any time.

By checking this box I agree to receive occasional marketing messages from Trusted Offers LLC. You can reply STOP to unsubscribe at any time. [8]

45. Based on an investigation conducted by Plaintiff's attorneys, texting "STOP" to 629-249-6925, the phone number that Plaintiff was texted by will result in an automated response, indicating the use of an autodialer or automated text message platform:

---

[7] https://www.facebook.com/groups/481284246081410/posts/1693758501500639/
[8] https://trustedoffersllc.org/optin




46. Plaintiff Moore has never done business with Trusted Offers or consented to be contacted by them.

47. Plaintiff Moore never inquired about, applied for, or expressed interested in selling her property to Trusted Offers or any related entity.

48. The unauthorized solicitation text messages that Plaintiff received from or on behalf of Defendant have harmed Plaintiff Moore in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

49. Seeking redress for these injuries, Plaintiff Moore, on behalf of herself and Class of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

**50.** Plaintiff Moore brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Class:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Trusted Offers texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant texted Plaintiff.

51. The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its

subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Moore anticipates the need to amend the Class definitions following appropriate discovery.

52. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable, and Plaintiff is a member of the Class.

53. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

(a) whether Defendant Trusted Offers placed multiple text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each call and/or text message;

(b) whether the text messages constitute a violation of the TCPA;

(c) whether members of the Do Not Call Class are entitled to treble damages based on the willfulness of Defendant's conduct.

54. **Adequate Representation**: Plaintiff Moore will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in

class actions. Plaintiff Moore has no interests antagonistic to those of the Class, and the Defendant has no defenses unique to Plaintiff. Plaintiff Moore and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and have the financial resources to do so. Neither Plaintiff Moore nor her counsel have any interest adverse to the Class.

55. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Class as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Class and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Class uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Class as wholes, not on facts or law applicable only to Plaintiff Moore. Additionally, the damages suffered by individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Class to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

## FIRST CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Moore and the Do Not Call Registry Class)**

56. Plaintiff repeats and realleges paragraphs 1-55 of this Complaint and incorporates them by reference herein.

57. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

58. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

59. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Moore and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

60. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Moore and the Do Not Call Registry Class received more than one text message in a 12-month period sent by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

61. As a result of Defendant's conduct as alleged herein, Plaintiff Moore and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

62. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Class as defined above; appointing Plaintiff as the representative of the Class; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA:

d) An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff Moore requests a jury trial.

**GINA MOORE**, individually and on behalf of all others similarly situated,

DATED this 20th day of January, 2026.

By: /s/ *Bradley G. Kirk*
Bradley G. Kirk (17100)
bgkirklaw@gmail.com
Attorney at Law
1910 Madison Avenue, #112
Memphis, TN 38104
(901) 206-6163

Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, Floor 4
Coral Gables, FL 33133
Telephone: (305) 469-5881

*Attorneys for Plaintiff and the putative Class*